**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 20-3114

———————————

CPM CONSULTING LLC; MARTINO RIVAPLATA,
Appellants

v.

CAPSUGEL US LLC

———————————

On Appeal from the
United States District Court for the District of New Jersey
(No. 2:19-cv-16579)
The Honorable John M. Vazquez

———————————

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 24, 2021

Before: CHAGARES, HARDIMAN, and MATEY, *Circuit Judges*

(Opinion filed: September 28, 2021)

———————————

OPINION[*]

———————————

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

MATEY, *Circuit Judge.*

Capsugel US LLC contracted with a staffing agency to hire Martino Rivaplata for a project that Rivaplata alleges was supposed to last at least six months. When Capsugel ended the engagement after three, Rivaplata filed suit claiming discrimination in violation of New Jersey's Law Against Discrimination ("LAD"). The District Court granted Capsugel's motion for summary judgment and dismissed Rivaplata's claims. We will affirm.

## I. BACKGROUND

Capsugel needed help with a time-sensitive IT project and engaged the Robert Half staffing agency to find a solution. Robert Half suggested Rivaplata, an IT consultant. Satisfied, Robert Half and Capsugel memorialized their agreement in a Statement of Work ("SOW"). Under the SOW, Robert Half agreed to "assign" Rivaplata to Capsugel for an "[e]stimated" period of "3 months." (App. at 218 § 2.) The SOW allowed Capsugel or Robert Half to terminate the assignment with ten days' prior written notice. Rivaplata was not a party to the agreement.

Robert Half and Rivaplata (through his LLC, CPM Consulting) signed a Subcontractor Services Agreement ("Subcontractor Agreement"); Capsugel was not a party. That agreement listed the "expected project length" as "6 months +[.]" (App. at 230 (capitalization altered).) Nothing other than Rivaplata's assumption suggests that Capsugel ever saw the Subcontractor Agreement before this litigation

Rivaplata relocated from Texas to Morristown, New Jersey and signed a one-year apartment lease, relying on Robert Half's representations and his personal experience that

2

projects of six-or-more months "usually last for about 12 months." (App. at 3, 135.) At Capsugel, Rivaplata primarily worked with people of Indian descent and claims he was twice told to leave meetings because they were "all-Indian meeting[s]." (App. at 267.) After about two and a half months on site, Capsugel informed Robert Half and Rivaplata that his engagement would end after three months.

Rivaplata and CPM sued Capsugel in the District Court of Dallas County, alleging national origin discrimination in violation of the LAD, and tortious interference. Capsugel removed to the United States District Court for the Northern District of Texas, which dismissed CPM's tortious interference claim[1] and transferred Rivaplata's LAD claims to the District of New Jersey.

Capsugel then filed a motion for summary judgment arguing 1) Rivaplata was an independent contractor not protected by the LAD's employment discrimination provisions; 2) even if he were an employee, Rivaplata did not suffer an adverse employment decision; and 3) Rivaplata failed to show Capsugel refused to contract with him based on his national origin, as required to pursue a refusal to deal claim under LAD § 10:5-12(1).[2]

The District Court granted Capsugel's motion for summary judgment. The Court held Rivaplata's employment status did not matter because he did not suffer an adverse

---

[1] CPM is not a party to this appeal.

[2] Rivaplata's Complaint only brings claims under the LAD without specifying whether he is bringing claims under § 10:5-12(a) or § 10:5-12(l). (App. at 62–63.) But in summary judgment briefing, Rivaplata suggested he was asserting both, and Capsugel addressed Rivaplata's arguments on the merits. Capsugel has forfeited any argument about the proper scope of Rivaplata's claims. *Barna v. Bd. of Sch. Dirs. of the Panther Valley Sch. Dist.*, 877 F.3d 136, 147 (3d Cir. 2017).

employment decision, and did not show Capsugel refused to contract with him based on his national origin. Rivaplata timely appealed.[3]

### III. DISCUSSION

Rivaplata argues that he made a sufficient case of employment discrimination, and that the District Court misapplied the law in denying his refusal-to-deal claim. We conclude that no reasonable jury could conclude that Capsugel acted for discriminatory reasons. On that basis, we will affirm the grant of summary judgment for Capsugel.

### A.    Legal Framework

Under N.J. Stat. Ann. § 10:5-12(a) it is unlawful for "an employer," to "refuse to hire or employ or to bar or to discharge . . . from employment" an individual "because of [his] race, creed, color, national origin," or other protected characteristics. Borrowing the three-step test announced by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a plaintiff must show a prima facie case of discrimination. *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 249 (3d Cir. 2006) (citing *Gerety v. Atlantic City Hilton Casino Resort*, 877 A.2d 1233, 1237 (N.J. 2005)). The burden then shifts to the employer to produce evidence that its decision was legitimate and nondiscriminatory.

---

[3] The District Court had jurisdiction sitting in diversity under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review, viewing facts in the light most favorable to the non-moving party. *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020). We will affirm a grant of summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(a)). A factual dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Id.* We can affirm on any basis supported by the record, *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 751 (3d Cir. 2019), as long as the issue underlying our decision was before the district court. *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 336 (3d Cir. 2009).

4

*Greenberg v. Camden Cty. Vocational & Tech. Sch.*, 708 A.2d 460, 465–66 (N.J. App. Div. 1998). The plaintiff can rebut with a preponderance of evidence showing the employer's proffered legitimate reason was pretextual. *Id.* at 466. That requires either direct evidence of discriminatory motives, *Bergen Com. Bank v. Sisler*, 723 A.2d 944, 955 (N.J. 1999), or showing the proffered reason is "unworthy of credence" because of "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions." *Greenberg*, 708 A.2d at 466 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)). Even to defeat summary judgment, this rebuttal burden is a "difficult" one. *Fuentes*, 32 F.3d at 765.

For independent contractors, N.J. Stat. Ann. § 10:5-12(l) makes it unlawful for anyone to refuse to "contract with" or "otherwise do business with" them "on the basis of the[ir] race, . . . national origin," or other protected characteristics. *Rubin v. Chilton*, 819 A.2d 22, 25 (N.J. App. Div. 2003) (explaining that independent contractors can bring LAD claims under § 10:5-12(l)). Although "few cases constru[e] this section of the LAD," *J.T.'s Tire Serv., Inc. v. United Rentals N. Am., Inc.*, 985 A.2d 211, 214 (N.J. App. Div. 2010), this provision requires proof of discriminatory intent. *See id.* at 216.

**B.  Rivaplata Cannot Carry His Burden**

The undisputed facts show that this was an ordinary transaction that came to its natural conclusion. Capsugel needed external IT help to meet a pressing deadline. It contracted with Robert Half to assign Rivaplata to supply that help. The SOW estimated a three-month project length. Rivaplata completed the time-sensitive deliverables and his assignment ended just under three months later.

Based on these undisputed material facts, no reasonable jury could render a verdict for Rivaplata. *Razak*, 951 F.3d at 144. First, we are skeptical Rivaplata can make his prima facie showing under LAD § 10:5-12(a) or a claim under § 10:5-12(l) because Capsugel did not seek or fill his position with a similarly qualified person. *Gerety*, 877 A.2d at 1237. Rivaplata completed the IT work he was contracted to perform after three months, exactly as Capsugel assumed.

But even assuming Rivaplata can make a prima facie showing,[4] his evidence does not prove Capsugel's proffered reason is pretextual. Two "all-Indian" meetings do not prove that the length of Rivaplata's engagement was motivated by discriminatory animus. Whatever Robert Half told Rivaplata about the project's duration is irrelevant to showing how long *Capsugel* intended Rivaplata's engagement to last. Likewise, Capsugel's alleged representation to Rivaplata that the project could last six months or more does not render implausible or inconsistent Capsugel's explanation that it only needed three months of work from Rivaplata, especially given the express terms of the SOW and external deadline. *See Greenberg*, 708 A.2d at 466. That Rivaplata's performance was by all accounts satisfactory lends more credence to Capsugel's explanation. Far from being implausible, inconsistent, incoherent, or contradictory, Capsugel's explanation makes perfect sense.

We therefore conclude no reasonable jury could render a verdict for Rivaplata on his employment discrimination claim under LAD § 10:5-12(a) because he cannot establish

---

[4] We assume without deciding that Rivaplata endured an adverse employment decision, whether by termination or refusal to extend his contract.

6

his engagement ended for discriminatory reasons. For the same reason, Rivaplata cannot prevail on his refusal-to-deal claim under § 10:5-12(l).[5]

## IV. CONCLUSION

We will affirm the judgment of the District Court.

---

[5] Because we conclude there is no genuine dispute of material fact, we need not address Rivaplata's other arguments.